UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ROSALINA R.,[1] | Case No. 2:19-cv-04921-GJS |
| Plaintiff | |
| v. | **MEMORANDUM OPINION AND ORDER** |
| ANDREW M. SAUL, Commissioner of Social Security, | |
| Defendant. | |

## I.   PROCEDURAL HISTORY

Plaintiff Rosalina R. ("Plaintiff") filed a complaint seeking review of the decision of the Commissioner of Social Security denying her application for Disability Insurance Benefits ("DIB"). The parties filed consents to proceed before the undersigned United States Magistrate Judge [Dkts. 10 and 20] and briefs addressing disputed issues in the case [Dkt. 13 ("Pl. Br."), Dkt. 18 ("Def. Br.") and Dkt. 19 ("Reply")]. The matter is now ready for decision. For the reasons discussed below, the Court finds that this matter should be remanded for further proceedings.

---

[1]   In the interest of privacy, this Order uses only the first name and the initial of the last name of the non-governmental party.

## II. ADMINISTRATIVE DECISION UNDER REVIEW

On November 12, 2015, Plaintiff filed her application for DIB alleging disability based on a variety of issues including severe pain in her neck, shoulders, arms and lumbar spine. [Dkt. 12, Administrative Record ("AR").] Plaintiff's application was denied initially, on reconsideration, and after a hearing before Administrative Law Judge ("ALJ") Bruce T. Cooper. [AR 1-6, 15-24.]

Applying the five-step sequential evaluation process, the ALJ found that Plaintiff was not disabled. *See* 20 C.F.R. §§ 416.920(b)-(g)(1). At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since March 30, 2015, the alleged onset date. [AR 18.] At step two, the ALJ found that Plaintiff had the following severe impairments: degenerative disc disease of the cervical and lumbar spine; osteoarthrosis of the bilateral shoulders; and vision loss. [AR 18.] The ALJ determined at step three that Plaintiff did not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments. [AR 20.]

Next, the ALJ found that Plaintiff had the residual functional capacity ("RFC") to perform a limited range of medium work. [AR 20.] Applying this RFC, the ALJ found at step four that Plaintiff could perform her past relevant work as a nurse assistant and thus she is not disabled. [AR 23.] Plaintiff sought review of the ALJ's decision, which the Appeals Council denied, making the ALJ's decision the Commissioner's final decision. [AR 1-6.]

On appeal to this Court, Plaintiff raises the following arguments including that the ALJ failed to: (1) properly consider whether she was literate in English; (2) find her fibromyalgia a severe impairment; (3) accurately account for her bilateral shoulder pain and vision problems in her Residual Functional Capacity ("RFC") assessment; (4) properly consider the opinion of her treating physician Thomas Grogan, M.D.; and (5) provide sufficient reasons for rejecting her subjective symptom testimony. [Pl. Br. at 1-25; Reply at 1-10.] As set forth below, the Court

agrees with Plaintiff, in part, and remands the matter for further proceedings.

## III. GOVERNING STANDARD

Under 42 U.S.C. § 405(g), the Court reviews the Commissioner's decision to determine if: (1) the Commissioner's findings are supported by substantial evidence; and (2) the Commissioner used correct legal standards. *See Carmickle v. Comm'r Soc. Sec. Admin.*, 533 F.3d 1155, 1159 (9th Cir. 2008); *Brewes v. Comm'r Soc. Sec. Admin.*, 682 F.3d 1157, 1161 (9th Cir. 2012) (internal citation omitted). "Substantial evidence is more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Gutierrez v. Comm'r of Soc. Sec.*, 740 F.3d 519, 522-23 (9th Cir. 2014) (internal citations omitted).

The Court will uphold the Commissioner's decision when the evidence is susceptible to more than one rational interpretation. *See Molina v. Astrue*, 674 F.3d 1104, 1110 (9th Cir. 2012). However, the Court may review only the reasons stated by the ALJ in his decision "and may not affirm the ALJ on a ground upon which he did not rely." *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007). The Court will not reverse the Commissioner's decision if it is based on harmless error, which exists if the error is "inconsequential to the ultimate nondisability determination, or if despite the legal error, the agency's path may reasonably be discerned." *Brown-Hunter v. Colvin*, 806 F.3d 487, 492 (9th Cir. 2015) (internal quotation marks and citations omitted).

## IV. DISCUSSION

**A.  Plaintiff's Ability to Communicate in English Is Supported by Substantial Evidence.**

Plaintiff argues that the ALJ improperly assessed her ability to communicate in English which resulted in an improper finding that she could return to her past relevant work, as generally performed. (Pl. Br. at 2-10). Specifically, Plaintiff contends that a nursing assistant job (DOT code 355.674-014) requires a Level 2

1   language proficiency which exceeds her English abilities.  Defendant responds that
2   there is substantial evidence that Plaintiff was able to speak English and therefore
3   perform her past relevant work as a nursing assistant.  (Def's Br. at 3).  Upon a
4   review of the record, the Court agrees with the Defendant.

5       The step four analysis is limited to determining whether the claimant can
6   perform his or her past relevant work.  20 CFR §§ 404.1520 and 416.920.  Thus, at
7   step four of the disability analysis, the claimant has the burden to prove she cannot
8   perform her prior relevant work "either as actually performed or as generally
9   performed in the national economy." *Carmickle*, 533 F. 3d 1155, 1166 (9th Cir.
10  2005).  The step four determination involves a comparison between the demands of
11  the claimant's former work and his or her present capacity.  *Villa v. Heckler*, 797
12  F.2d 794, 798 (9th Cir. 1986).  It is Plaintiff's burden to demonstrate that she is
13  unable to return to the previous job, and if she is unable to do so, the burden remains
14  with her rather than shifting to the Commissioner to proceed with step five.
15  *Matthews v. Shalala*, 10 F.3d 678, 681 (9th Cir. 1993).  Although there are
16  circumstances where VE testimony is necessary at step five, it is not required at step
17  four.  *Id.*  (explaining that when the burden remains with the claimant at step four,
18  VE testimony is useful but not required).

19      Here, the ALJ did not make a specific finding regarding whether Plaintiff
20  could communicate in English, however the ALJ noted that despite the presence of
21  an interpreter at the Administrative Hearing, Plaintiff "testified in English."  [AR
22  15.]  This was an appropriate determination as there was little ambiguity
23  surrounding Plaintiff's demonstrated ability to speak English.  Thus, to the extent
24  that Plaintiff argues that the ALJ's assumption that she could communicate in
25  English was not supported by substantial evidence, the Court finds that it was.

26      The evidence in the record demonstrates that Plaintiff moved to the United
27  States in 1973 when she was 18-years old.  [AR 50.]   At the time of the hearing,
28  Plaintiff had lived in the United States for over forty-three years and had worked

during most of that time.  When the ALJ asked Plaintiff about her education and training, Plaintiff testified that she went to school and received a license as a "certified nursing assistant" in June 1994.  [AR 51.]  After becoming certified, Plaintiff testified that she worked as a CNA for over 20 years, until March 30, 2015.  [AR 51.]  On her application for benefits in November 2015, Plaintiff reported that she can speak and understand English and she can write more than her name in English.  [AR 194.]  Although as Plaintiff argues she utilized the assistance of an interpreter at the administrative hearing, the ALJ clarified on the record that the "translator [was] present as a backup just in case."  [AR 32.]  Plaintiff's non-attorney representative agreed with that premise by responding, "backup just in case."  [AR 32.]  *See Khan v. Colvin*, No. 2:11-cv-2957-KJN, 2013 U.S. Dist. LEXIS 24957, 2013 WL 657881, at *6-8 (E.D. Cal. Feb. 20, 2013) (finding that Plaintiff could communicate in English despite the presence of a Punjabi interpreter at the administrative hearing.)

      The interpreter's presence as ancillary to the proceedings is further demonstrated by the audio recording of the administrative hearing.  In reviewing the audio file submitted by Plaintiff's counsel, it is apparent that Plaintiff was able to effectively communicate in English with both the ALJ and her non-attorney representative.  *See* Declaration of Andrew T. Koenig, Ex. 1 (Dkt. 19-1) ¶ 2-3.  During the overwhelming majority of the hearing, Plaintiff appeared to understand the general proceedings with relative ease, only conferring with the Spanish interpreter on two brief occasions.

      Given Plaintiff's demonstrated ability to effectively communicate in English, the Court finds that the ALJ's determination regarding Plaintiff's English literacy and communication skills is supported by substantial evidence in the record.  Accordingly, there was no apparent conflict between the ALJ's step four finding and Plaintiff's English language skills.  *See also Rivera v. Colvin*, No. CV 14-09217-KS, 2016 U.S. Dist. LEXIS 2534, 2016 WL 94231, at *6-8 (C.D. Cal. Jan. 7, 2016)

(finding no conflict between DOT and VE's testimony that person with "somewhat limited ability to communicate in English" could perform jobs requiring Level 1 language proficiency).  Plaintiff's appeal on this issue is denied.

**B.     The ALJ Failed to Properly Assess Plaintiff's Fibromyalgia at Step Two**

In her next issue, Plaintiff contends that the ALJ erred at step two of the sequential evaluation by finding that her fibromyalgia was not a severe impairment. Specifically, Plaintiff argues that she was diagnosed with fibromyalgia and numerous other somatic symptoms consistent with fibromyalgia, yet the ALJ failed to perform the proper analysis by using only one of the two diagnostic methods for evaluating fibromyalgia as recognized by SSR 12-2p.   [Pl. Br. at 12-17.]

SSR 12-2p directs how claims of fibromyalgia should be evaluated.  *See Revels v. Berryhill,* 874 F.3d 648, 662 (9th Cir. 2017) (explaining that in evaluating a claim of fibromyalgia, "the medical evidence must be construed in light of fibromyalgia's unique symptoms and diagnostic methods, as described in SSR 12-2P and *Benecke*").  SSR 12-2p "provide[s] two sets of criteria for diagnosing [fibromyalgia]": the first set of criteria is based on the 1990 American College of Rheumatology Criteria for the Classification of Fibromyalgia ("the 1990 criteria"), and the second set of criteria is based on the 2010 American College of Rheumatology Preliminary Diagnostic Criteria ("the 2010 criteria").  SSR 12-2p, 2012 WL 3104869 at *2.  The 1990 criteria require a history of widespread pain that has persisted for at least three months; at least 11 positive tender points on physical examination; and evidence that other possible diagnoses have been excluded.  *Id.* at *2-3.  The 2010 criteria, by contrast, require a history of widespread pain; "[r]epeated manifestations of six or more fibromyalgia symptoms, signs, or co-occurring conditions, especially manifestations of fatigue, cognitive or memory problems ('fibro fog'), waking unrefreshed, depression, anxiety disorder, or irritable bowel syndrome"; and evidence that other possible diagnoses have been excluded. *Id.* at *3.

6

1    Plaintiff's medical records show a well-documented history of fibromyalgia.
2    Between January 20, 2016 and November 6, 2017, Plaintiff's treating physician Nu
3    Khin, M.D., documented Plaintiff's fibromyalgia 12 times.  [AR 487-499.]   The
4    treatment records from those 12 examinations also note a variety of symptoms
5    related to fibromyalgia such as tender and swollen legs/calves/thighs.  [AR 487-
6    488, 499), insomnia (AR 488-491), tenderness in the back/neck (AR 487-493, 495-
7    499), abdominal pain (AR 496, 498), hand pain (AR 495, 496, 499 ("unable to grasp
8    things"), knee pain (AR 488), tenderness in her buttocks (AR 488, 496, 497), left
9    elbow tenderness (AR 491), acid reflux or gastrointestinal reflux disease
10   ("GERD")(AR 487-493, 495-499), urethral stenosis and urge stress incontinence
11   despite a cystocele surgery on her bladder (AR 488, 490, 491), dizziness and
12   tiredness/fatigue (AR 488), severe osteopenia (AR 487, 489-491, 496), and
13   depression and/or anxiety (AR 487-493, 495, 496, 497 ("easy to cry for her physical
14   pain").

15   On December 27, 2017, examining physician Juliane Tran, M.D. completed
16   an orthopedic assessment without the benefit of Plaintiff's medical records.  [AR
17   475-476.]  Upon examination, Dr. Tran's impressions included both chronic pain
18   syndrome and pain disorder with a psychological factor.  [AR 480.]

19   In the decision, the ALJ recognized Plaintiff's fibromyalgia diagnosis,
20   including her prescription for Neurontin, but he concluded that Plaintiff's
21   fibromyalgia was not a severe, medically determinable impairment because "the
22   record contains insufficient evidence of testing for other possible causes for the
23   claimant's ailments, e.g. arthritis, and little documentation of tender point testing."
24   [AR 19-20.]  After his analysis of Plaintiff's fibromyalgia at step two, the ALJ did
25   not include any additional analysis or impose additional functional limitations
26   related to Plaintiff's fibromyalgia in her RFC.  In the final RFC assessment, the ALJ
27   found that Plaintiff could complete medium work.
28   Here, substantial evidence fails to support the ALJ's finding that Plaintiff's

alleged fibromyalgia is not a medically determinable impairment. As Plaintiff points out, the clinical evidence of record demonstrates that there is ample evidence of her somatic symptoms associated with fibromyalgia which refutes the ALJ's statement that her fibromyalgia was not medically determinable. *See also Buell v. Berryhill*, 716 Fed.Appx. 600, 601–02 (9th Cir. 2017); *Allen v. Colvin*, 2016 WL 7368128, at *3 (W.D. Wash. Jan. 8, 2016), *adopted*, 2016 WL 7368129 (W.D. Wash. Feb. 8, 2016). By ignoring this evidence, the ALJ did not fully address the 2010 criteria, which SSR 12-2p clearly identifies as acceptable alternative diagnostic criteria. Accordingly, the ALJ incorrectly applied the law when he determined that Plaintiff did not have the severe impairment of fibromyalgia.

The misanalysis here is particularly glaring given Plaintiff's medical records which suggest that she may meet the 2010 criteria for fibromyalgia based on her repeated manifestations of IBS/GERD/colitis, depression, anxiety, fatigue, muscle pain, dizziness, and stress incontinence as all of those symptoms are indicative of fibromyalgia. See SSR 12–2p, 2012 WL 3104869, at *2–3 (July 25, 2012)6; *1087; *Benecke v. Barnhart*, 379 F.3d 587, 589–90 (9th Cir. 2004) (explaining that common symptoms of fibromyalgia "include chronic pain throughout the body, multiple tender points, fatigue, stiffness, and a pattern of sleep disturbance that can exacerbate the cycle of pain and fatigue associated with this disease"). Further, there are no laboratory tests or objective findings that confirm the presence or severity of fibromyalgia. *Benecke*, 379 F.3d at 590; *Belanger v. Berryhill*, 685 Fed.Appx. 596, 598, 2017 WL 1164401, at *1 (9th Cir. 2017). Indeed, "[o]ne of the most striking aspects of this disease is the absence of symptoms that a lay person may ordinarily associate with joint and muscle pain." *Rollins v. Massanari*, 261 F.3d 853, 863 (9th Cir. 2001) (Ferguson, J., dissenting); *see also Cota v. Comm'r of Soc. Sec.*, No. 08-00842, 2009 WL 900315, at *9 (E.D. Cal. Mar. 31, 2009) ("Joints in fibromyalgia patients appear normal; musculoskeletal examinations generally indicate no objective joint swelling or abnormality in muscle strength, sensory

1 functions, or reflexes.").

2 　　　Moreover, as to the ALJ's question of whether other disorders could have
3 caused these repeated manifestations of symptoms, it appears not. X-rays of
4 Plaintiff's shoulders and elbows revealed only mild degeneration (AR 506-509 403),
5 and x-rays of the cervical spine showed, "no major changes," despite Plaintiff's
6 complaints of pain increasing in intensity. [AR 18, 460.] Additionally, there is no
7 other medical explanation for Plaintiff's chronic gastrointestinal problems and
8 continued stress incontinence despite bladder surgery to correct her symptoms.

9 　　　And although not argued by the Commissioner in its brief, the Court cannot
10 find the ALJ's error harmless here. An error is harmless only if it is
11 "inconsequential" to the ALJ's "ultimate nondisability determination." *Stout v.*
12 *Comm'r, Soc. Sec. Admin.*, 454 F.3d 1050, 1055 (9th Cir. 2006); *see also Molina v.*
13 *Astrue*, 674 F.3d 1104, 1115 (9th Cir. 2012) (error harmless if "there remains
14 substantial evidence supporting the ALJ's decision and the error does not negate the
15 validity of the ALJ's ultimate conclusion."). An ALJ's failure to consider an
16 impairment "severe" at step two is harmless if the ALJ considers all impairments—
17 regardless of severity—in the subsequent steps of the sequential analysis. *See Lewis*
18 *v. Astrue*, 498 F.3d 909, 911 (9th Cir. 2007) (finding step two error harmless as the
19 ALJ specifically discussed plaintiff's bursitis and its effects when identifying the
20 basis for limitations in plaintiff's RFC). Here, the ALJ did not discuss fibromyalgia
21 in the subsequent steps of the sequential evaluation and ultimately found that
22 Plaintiff could perform medium work. [AR 20.]

23 　　　Because a step-two evaluation is to dispose of "groundless claims," and the
24 evidence here was far beyond "groundless" to show that Plaintiff suffers from
25 fibromyalgia, the ALJ erred at step-two. *See Webb v. Barnhart*, 433 F.3d 683, 687
26 (9th Cir. 2005). The evidence in the record was sufficient for the ALJ to conclude
27 that Plaintiff's fibromyalgia is a severe impairment at step two under the *de minimis*
28 test. For the foregoing reasons, the matter is remanded for further proceedings. On

remand, the ALJ must evaluate Plaintiff's fibromyalgia as a severe impairment at step-two and assess the limitations imposed by Plaintiff's fibromyalgia in the ALJ's overall evaluation of Plaintiff.[2]

## V. CONCLUSION

The decision of whether to remand for further proceedings or order an immediate award of benefits is within the district court's discretion. *Harman v. Apfel*, 211 F.3d 1172, 1175-78 (9th Cir. 2000). When no useful purpose would be served by further administrative proceedings, or where the record has been fully developed, it is appropriate to exercise this discretion to direct an immediate award of benefits. *Id.* at 1179 ("the decision of whether to remand for further proceedings turns upon the likely utility of such proceedings"). But when there are outstanding issues that must be resolved before a determination of disability can be made, and it is not clear from the record the ALJ would be required to find the claimant disabled if all the evidence were properly evaluated, remand is appropriate. *Id.*

Here, the Court finds that remand is appropriate because the circumstances of this case suggest that further administrative review could remedy the ALJ's errors. *See INS v. Ventura*, 537 U.S. 12, 16 (2002) (upon reversal of an administrative determination, the proper course is remand for additional agency investigation or explanation, "except in rare circumstances"); *Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1101 (9th Cir. 2014) (remand for award of benefits is inappropriate where "there is conflicting evidence, and not all essential factual issues have been resolved"); *Harman*, 211 F.3d at 1180-81. The Court has found that the ALJ erred by failing to consider all of the relevant medical evidence and

---

[2] The Court has not reached the remaining issues raised by Plaintiff, except as to determine that reversal with the directive for the immediate payment of benefits would not be appropriate at this time. However, the ALJ should address Plaintiff's additional contentions of error when evaluating the evidence on remand. [*See* Pltf.'s Br. at 10-25.]

find Plaintiff's fibromyalgia to be a medically determinable impairment. Thus, remand is appropriate to allow the Commissioner to continue the sequential evaluation process starting at step two.

For all of the foregoing reasons, **IT IS ORDERED** that:

(1) the decision of the Commissioner is REVERSED and this matter REMANDED pursuant to sentence four of 42 U.S.C. § 405(g) for further administrative proceedings consistent with this Memorandum Opinion and Order; and

(2) Judgment be entered in favor of Plaintiff.

**IT IS SO ORDERED.**

DATED: July 30, 2020

_____
GAIL J. STANDISH
UNITED STATES MAGISTRATE JUDGE